## DILLMAN *v.* HASTINGS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

No. 201. Argued March 9, 1892. — Decided March 28, 1892.

From March, 1875, to May, 1881, D. sent to H. from time to time various sums of money, to be lent by him for complainant at interest; H. being

Opinion of the Court.

instructed and agreeing to reinvest the interest in the same way. The money was at first invested at 10 per cent, but early in 1881 H. informed D. that the rate was reduced to 8 per cent. H. died in 1886. D. filed a bill in equity against his executors for an account and payment of what might be found due. They answered and the cause was referred to a master. The executors produced at the hearing no books of accounts or papers of H. and no statements by him of his investments. In the account stated by the master interest was included up to April 1, 1881, at 10 per cent, and at 8 per cent thereafter with annual rests, and a decree was entered accordingly. *Held*,

(1) That a trust relation between the parties was disclosed, which entitled the complainant to an account;

(2) That it was the duty of H. to keep an account and that in its absence it must be presumed that he reinvested interest moneys, as received, at the rates named in the correspondence;

(3) That after his death his executors should be charged at the legal rate of 6 per cent;

(4) That certain claims set up by the executors for taxes paid were not sustained by the proof.

THE case is stated in the opinion.

*Mr. A. S. Worthington* for appellant.

No appearance for appellees.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

This was a bill filed by Jared W. Dillman, November 8, 1886, against the administrators of Joseph Hastings, deceased, in the Circuit Court of the United States for the Northern District of Ohio, which set forth that from and including the month of March, 1875, to and including the month of May, 1881, complainant sent to Hastings from time to time various sums of money to be lent by him for complainant at interest, Hastings being instructed and agreeing to reinvest the interest in the same way. The money was first invested at ten per cent annual interest, but early in 1881 Hastings informed Dillman that the rate of interest was reduced to eight per cent. Hastings died on February 12, 1886.

The administrators answered, alleging ignorance of the

transactions or agreements between Hastings and Dillman except that they admitted that at the time of his death Hastings had of Dillman's money the sum of $1875. They also averred that an agreement to account for interest at ten per cent was illegal and void; and set up the statute of limitations as to that part of the account which accrued prior to December 25, 1879.

Replication was duly filed and depositions taken, and on January 10, 1888, by agreement of parties the cause was referred to the clerk of the court "because of his skill in matters of accounting," as a special master, "to hear and from the testimony determine and report to the court, what, if anything, is due complainant herein from the defendants herein on account of the matters set forth in complainant's bill filed herein and what relief be granted to said complainant; and for the purposes of this reference the said special master is hereby vested with all the power and authority conferred upon masters in chancery by the equity rules of the Supreme Court and by the practice of this court. He is authorized to hear testimony, and he will report his findings of law and fact, together with the evidence taken, and also state an account, based upon such facts, between said parties, at the earliest practicable day."

On April 28, 1888, the master filed his report, finding due to the complainant the sum of $14,394.50, with interest thereon at the rate of six per cent from February 12, 1886. This total was arrived at by charging Hastings with the cash received by him, with interest on each item at ten per cent, with annual rests, to April 1, 1881, and at eight per cent thereafter, making an aggregate of $15,694.50, and deducting therefrom a credit by cash paid on February 2, 1886, of $700, and also the sum of $600 for compensation allowed Hastings, leaving a balance of $14,394.50.

Complainant's counsel filed three exceptions to the master's report, of which the first and second alone were relied on, which were : (1) That the master allowed interest at the rate of only six per cent from the time of the death of Joseph Hastings, whereas he should have allowed eight per cent :

(2) That the master allowed a compensation of $600 for services of Hastings, whereas no compensation should have been awarded. The defendants filed ten exceptions, but they have not appealed, and therefore these need not be considered, except so far as they were sustained by the court.

The case having come on to be heard on the report and the exceptions on both sides, was argued by counsel, and the court disallowed complainant's exceptions, and also defendants' exceptions, except that the court found "that the master erred in the method of computing interest on the amounts in his report set forth; that the taxes set out in the evidence in the case should have been allowed the respondents, and that the respondents should have been allowed the sum of one thousand and eighty dollars for compensation for services in the agency." And the court, except as above specified, confirmed and approved the report, and, after making the allowances indicated, found that there was due complainant from the administrators of the estate the sum of $12,172.59, with interest from June 5, 1888, the first day of the term, and decreed accordingly. The case was thereupon appealed to this court by the complainant.

In the account stated by the master, interest was included up to April 1, 1881, at the rate of ten per cent, and at eight per cent thereafter, with annual rests. This was upon the view that Hastings had invested complainant's remittances at these rates, and received and reinvested the interest in the same way, as shown by the correspondence between the parties. We concur with the master that this is a fair deduction from the evidence, which leaves no reasonable doubt that such was the fact, and if not, that complainant believed it to be so upon the strength of Hastings' assurances to that effect, and left the money in his hands under that conviction.

Not only did the correspondence sustain the master's conclusion, but the administrators did not testify, and produced no books or papers showing the state of accounts between the decedent and the complainant, notwithstanding notice to do so, and although the letters tended to establish that Hastings kept a book containing an account of his investments for

complainant. The trust relation between the parties was fully disclosed and entitled complainant to a complete accounting; and, as the master held, it was clearly Hastings' duty to keep accounts as between him and complainant, and whatever data existed in Hastings' papers, calculated to throw light upon the transactions, should of course have been furnished. In the absence of such data and upon a careful examination of the evidence, we hold that the master was right in the course he pursued.

On the second of April, 1881, complainant wrote Hastings that, according to his account, if he had calculated correctly, the sum in Hastings' hands on April 1 amounted to about $10,500; and this does not appear to have been questioned by Hastings. According to the master's report the sum at that time, interest being included at ten per cent, with annual rests, was $10,495.18, and interest after that was calculated at eight per cent with which rate complainant wrote he should be entirely satisfied, but wished his money returned to him so far as that rate could not be obtained.

Defendants' third exception questioned the allowance of interest upon the ground that an agreement to account to plaintiff at such rates would be illegal and void, and because it was not shown that such interest was received by the deceased. But it was not contended that if the interest were received, defendants were not obliged to account therefor, and we think for the reasons given that this exception should not have been sustained. The Circuit Court does not seem to have delivered any opinion, and there is nothing in the decree giving a sufficient basis to ascertain, with precision, in what respect the court held that the master erred in the method of computing interest. But this is not material, inasmuch as we are of opinion that the master's report was correct in this regard.

After the death of Hastings, which occurred, as already stated, on February 12, 1886, his administrators should not be held to respond at a greater rate of interest than six per cent, which was the legal rate in Ohio, in the absence of special agreement, it not sufficiently appearing that they themselves

received interest at a higher rate, and therefore the complainant's first exception was properly overruled.

The master allowed six hundred dollars compensation, which was raised by the court to one thousand and eighty dollars. A portion of this increase, we presume, was for interest upon the proper compensation from time to time during the period covered by the transactions. At all events, while the proof is not satisfactory that Hastings was to obtain his compensation from complainant rather than from the borrowers, we are not inclined to modify the decision of the court upon this point, and this disposes of the second exception.

It was found by the court that the taxes set out in the evidence as paid by Hastings should have been allowed the defendants. As we understand the record, these taxes amounted with the interest thereon, calculated at ten per cent and eight per cent up to February 12, 1886, to $770.45, and we agree with the master that it does not appear for whom these taxes were paid. It was provided by the statute of Ohio that " every person required to list property on behalf of others . . . shall list it separately from his own, specifying in each case the name of the person, company or corporation to whom it belongs." Rev. Stats. Ohio, 1890, § 2735. No such listing of Dillman's money is shown.

The evidence established the payment of certain taxes by Hastings, but not that they were paid on account of Dillman or of anybody other than himself. It appeared that Hastings had money of his own, and that he received money from other persons than Dillman, which he loaned for them, taking the securities in his own name. If Dillman could have been taxed in respect of his moneys in Ohio, it is enough that the record does not show that these taxes were levied as against such moneys, and paid on his account. And here again the absence of evidence on defendants' behalf should be borne in mind, for, we repeat, it was Hastings' duty to have kept accounts, and the case made justifies the inference that there were such. The bill avers that when complainant presented his claim against the estate he credited these taxes, with interest, upon the faith of a memorandum furnished by defendants,

but, finding that the credit was unfounded, he insisted that he should not be charged therewith. In our judgment the court ought not to have allowed the taxes under the circumstances.

We notice that interest should have been allowed at the rate of eight per cent on the $700 paid by Hastings to Dillman, February 2, 1886, from that date to February 12, being $1.55, as shown by the account annexed to the bill.

The amount found due by the master was $15,694.50, from which he deducted $700 in cash, paid February 2, 1886, and $600 for compensation. We think from the $15,694.50 there should be deducted $701.55, and also $1080 as compensation, as found by the court. This leaves a balance of $13,912.95, and to that extent the decree is modified.

The result is that the decree will be reversed with costs, and the cause remanded with a direction to enter a decree for $13,912.95, with interest at six per cent from February 12, 1886, to the date of the decree.

*Decree reversed.*