## INTERNATIONAL BANKING CORPORATION v. LYNCH.

(Circuit Court of Appeals, Ninth Circuit.  December 6, 1920.)

No. 3506.

·Corporations ☜559(5), 565(8)—Right of pledgee to sell corporation's securities not affected by appointment of receiver, or by filing statement of its claim.

> Appointment of a receiver for an insolvent corporation in a creditor's suit, with an order enjoining interference with possession of defendant's property by the receiver, *held* not to deprive a pledgee of its securities, not a party to the suit, of the right to sell the same in accordance with the terms of the pledge; nor does the filing by the pledgee of a statement of its claim, pursuant to an order of the court, have such effect.

Appeal from the District Court of the United States for the Second Division of the Northern District of California; William C. Van Fleet, Judge.

The International Banking Corporation appeals from an order obtained by John C. Lynch, as receiver of the Pacific Coast Casualty Company, in a suit by Daniel Combs against such Company.  Reversed and remanded.

Marcel E. Cerf and C. H. Sooy, both of San Francisco, Cal., for appellant.

Hiram W. Johnson, Jr., and A. A. DeLigne, both of San Francisco, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge.  November 17, 1916, Daniel Combs commenced suit in the court below against the Pacific Coast Casualty Company, a California corporation, alleging among other things, that it was indebted to him in the sum of $3,500 for legal services, and that it had become and was insolvent, and that certain creditors of the corporation other than himself had recovered judgments against it upon their respective claims, and that still other creditors threatened similar suits, the result of all which would be irreparable loss and damage to the plaintiff, as well as to such other creditors, and praying, among other things, the appointment of a receiver of the property of the alleged insolvent, to take possession of and administer all of its property, and for an order enjoining the defendant, its officers and agents, and all other persons, from transferring, selling, or disposing of any of the property of the corporation, or from in any way interfering with such receiver's possession or management thereof.

The appellee was appointed such receiver December 6, 1916, with the usual powers; the order including the restraining order asked for. At that time the Casualty Company was indebted to the appellant International Banking Corporation in the sum of $32,100.23 on various promissory notes that had been theretofore executed to the bank, all of which indebtedness was in part secured by the pledge to it of various bonds and coupons and of 100 shares of the stock of the Cal-

ifornia Wine Association, a corporation, all of which securities were accompanied by an agreement executed by the Casualty Company to the bank on the 25th day of February, 1916, expressly declaring, among other things, that—

"Upon failure of the undersigned [the Casualty Company] to pay any indebtedness to said bank at maturity, or to keep up the margin of collateral securities above provided for, then, in either event, said bank may immediately, without advertisement, and without notice to the undersigned of time or place or sale, sell any of the securities held by it at private sale or otherwise (and as incidental thereto may indorse any thereof in the name and behalf of the undersigned), and shall apply the net proceeds therefrom toward the payment of the liabilities of the undersigned in such manner as it may choose, holding the undersigned responsible for any deficiency, including costs and reasonable attorney fees, remaining after such application. Said bank may be a purchaser, if such sale be at public auction, or at the Board of Brokers, and shall take title free from any right or equity of redemption of the undersigned; such right and equity being hereby expressly relinquished and waived."

March 10, 1917, the court, upon the petition of the receiver, duly verified, setting forth that there were a large number of claims outstanding against the insolvent defendant, entered an order "that all persons having claims of any kind or character whatever against the Pacific Coast Casualty Company, which claims accrued or became due or payable, or for which services were rendered or goods were supplied, prior to the appointment of said receiver, present said claims on or before the 15th day of June, 1917," and directing the proper publication of such notice.

June 14, 1917, the appellant banking corporation filed with the receiver its claim in the sum of $17,514.35. On the same day, to wit, June 14, 1917, the appellant banking corporation, acting upon the advice of its counsel, sold through the Stock and Bond Exchange of San Francisco, pursuant to the power conferred by the pledge agreement, the 100 shares of the capital stock of the California Wine Association for $2,875; that being the highest bid therefor at such sale.

March 18, 1918, the receiver presented to the court below a petition setting forth, among other things, that of the pledged property of the insolvent Casualty Company, held by the appellant International Banking Corporation, the latter had sold 5 Oakland Traction general consolidated mortgage bonds for $1,750, 21 Oakland Transit consolidated first mortgage bonds for $11,550, and 100 shares of stock of the California Wine Association for $2,875, and praying for an order directing the appellant banking corporation to show cause why it should not be punished for contempt of the order of the court theretofore made, restraining all persons from interfering with the property of the insolvent Casualty Company.

Upon the hearing of that order to show cause—the respondent thereto at the time objecting to any jurisdiction of the court respecting the matter—the respondent showed that it had fairly sold the Wine Association stock under the power given by the pledge agreement, after the advice of its counsel to the effect that it had the power so to sell it, and upon such showing the court discharged the rule to show cause.

Subsequently, and on August 28, 1918, the matter having been duly referred to the master, the latter began the hearing on the claim of the appellant Banking Corporation, at which hearing the latter objected to his jurisdiction to determine whether or not the appellant Banking Corporation had the power to sell the securities pledged to it that have been mentioned. The master ruled against the objections made, and found and reported to the court that the sale of the 100 shares of the stock of the Wine Association was void, as being made in violation of the restraining order contained in the order appointing the receiver, and requiring the appellant Banking Corporation "to restore to the fund of securities held as collateral the 100 shares of California Wine Association stock." To such finding and report the appellant Banking Corporation filed exceptions, which were overruled, and the master's report thereupon confirmed by the court, from which action the present appeal comes.

As was expressly found, both by the master and the court, there was present in the case no element of fraud or unfairness; but the view of both seems to have been that the sale of the shares of stock in pursuance of the power given by the pledge agreement under which it was held was void, because of the restraining order issued in the suit of Combs against the insolvent Casualty Company that has been mentioned. Long before that order was made, and, indeed, prior to the commencement of the suit in which it was entered—to which suit the appellant Banking Corporation, as has been stated, was not made a party—the shares of stock had been pledged to the appellant by the Casualty Company as part security for its indebtedness to the appellant, with full power to sell the stock at either private or public sale to satisfy the indebtedness, if not paid when due. The receiver appointed in the suit had the undoubted right to pay the indebtedness for which the stock was held as security, and thereupon to receive possession of it as the property of the insolvent owner; but it is equally clear that without paying such indebtedness he had no such right of possession, the stock remaining subject to sale by its pledgee pursuant to the terms of the pledge agreement.

In the Case of Jersey Island Packing Co., 138 Fed. 625, 71 C. C. A. 75, 2 L. R. A. (N. S.) 560, this court held that, where trust deeds were executed by a corporation afterwards becoming insolvent to secure debts not then due, the grantor retained an interest in the property conveyed, which passed to its trustee in bankruptcy for the benefit of its unsecured creditors; the trustee being entitled either to assume possession and sell the property for the benefit of the general creditors after satisfying the lien, or to refuse to take possession if its value, over and above the incumbrance, was not sufficient to justify an attempt to administer it. In the course of the opinion the court referred to the decision in Re Browne (D. C.) 104 Fed. 762, where that court, while declining to determine whether it had jurisdiction to interfere and prevent a fraudulent or oppressive exercise of the right of sale of personal property which had been pledged by the bankrupt more than four months prior to the bankruptcy, in a case where it had been agreed that the creditors intended to deal fairly with the property

pledged and to make an honest effort to sell for the best prices that could be obtained, was of the opinion that the Bankruptcy Act gave the court no authority to interfere between the creditors and the exercise of their right to sell given them by the collateral notes; and this court held that the case might be accepted as authority for the proposition that a District Court would not interfere with a sale by the pledgee of the thing, under the power of sale given by the terms of his contract, when there is no claim that such power is exercised in a fraudulent or oppressive manner—saying:

"The pledgee has a special property in the thing pledged, which entitles him to the possession, to protect which he may maintain detinue, replevin, or trover, and the interest of the pledgor is not subject to execution."

In the instant case the master, whose action in the matter was approved by the court below, took the view, as appears from his opinion appearing in the record, that as the appellant Banking Corporation presented to him on the 14th day of June, 1918, its claim, it thereby waived its right to pursue its pledge, and became a party to the suit of Combs against the Casualty Company, and bound by the restraining order issued therein on the 6th day of December, 1916.

If it be conceded that the decision of this court in the case above cited is not direct authority to the contrary, that even in bankruptcy cases such is not the rule is very clearly shown, we think, by the decision of the Supreme Court in the case of Jerome v. McCarter, 94 U. S. 734, at page 739 (24 L. Ed. 136), where that court distinctly adjudged that the subsequent bankruptcy of the pledgor does not deprive the pledgee of his right to dispose of the pledged property upon the default of the pledgor, holding that the sale of the bonds in that case by the pledgees conferred upon the purchasers the absolute title thereto, and saying:

"The position that the pledgees could not sell the pledge after the adjudication in bankruptcy, is quite untenable. It is sustained by nothing in the Bankrupt Act. The bonds were negotiable instruments. They passed by delivery, and even were there no expressed stipulation, in the contracts of pledge, that the pledgee might sell on default of the pledgor, such a right is presumable from the nature of the transaction. Certainly the Bankrupt Act has taken away no right from a pledgee secured to him by his contract."

The present, however, was a suit in equity by an unsecured creditor against his alleged insolvent debtor to obtain the appointment of a receiver for the purpose of taking possession of and administering its property, without making any other creditor a party to the suit and without in any way undertaking to sue in behalf of the appellant Banking Corporation or of any other secured creditor, nor, indeed, in behalf of any unsecured one. As respects the appellant Banking Corporation, it is obvious that there was no common interest between it and the complainant Combs; on the contrary, so far from their interests being identical, or even similar, they were wholly inconsistent and antagonistic. See 1 Story, Eq. Jurisprudence, § 548; Terry v. Bank (C. C.) 20 Fed. 777.

A suit in equity, said the Supreme Court in Pardee v. Aldridge, 189 U. S. 429, 433, 23 Sup. Ct. 514, 516 (47 L. Ed. 883)—

"is not a proceeding in rem properly so called. It does not purport to summon or invite, by notice or otherwise, all the world to come in, so far as there are any adverse interests. It is more personal even than the common law, and works out its decrees by orders to the defendants. Of course, the adjudication in such a suit does not conclude strangers."

In Risk v. Kansas Trust & Banking Co. (C. C.) 58 Fed. 45, Judge Sanborn held that the appointment of a receiver of an insolvent corporation on the bill of an unsecured creditor does not deprive secured creditors of the right to possess and enforce their securities, and, such securities having come into the possession of the receiver in that case, compelled him to give them up. Such a receiver, said the court—

"is the receiver of the property of the insolvent debtor. He is not the receiver of the property of the secured creditors of that debtor. The contract of the debtor was that these mortgages should not be removed from the custody of the bank until the bonds were paid, except as other mortgages, equal in amount, were deposited in their place. The debtor has not paid, and cannot pay, the bonds. The collaterals are of less value than the amount of the debt they are pledged to secure. Mr. Otis owns that entire debt, and is in reality the only person beneficially interested in the notes and mortgages pledged to secure it. The only right the defendant or its receiver has here is the right to redeem these collaterals by paying the bonds, and that is a right without value."

The filing with the receiver of the sworn statement of the appellant Banking Corporation's account against the insolvent debtor could not operate to make the appellant bound or in any way affected by the restraining order made by the court months before; it was in no sense a pleading in the case, its only function being to inform the receiver of the amount it would be necessary for him to pay in order to redeem the pledged securities and to acquaint him with what the appellant might be entitled to receive, if anything, out of the general assets of the insolvent estate should the securities held by the appellant fail to realize the total amount due it.

Strictly applicable to the case, we think, is the decision of the Supreme Court in Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 Sup. Ct. 360, 43 L. Ed. 640, where it was held that a secured creditor of an insolvent national bank may prove and receive dividends upon the face of his claim as it stood at the time of the declaration of insolvency, without crediting either his collaterals or collections made therefrom after such declaration, subject always to the proviso that dividends must cease when from them and from collaterals realized the claim has been paid in full—saying (173 U. S. on page 146, 19 Sup. Ct. 366 [43 L. Ed. 640]):

"The secured creditor is a creditor to the full amount due him, when the insolvency is declared, just as much as the unsecured creditor is, and can not be subjected to a different rule. And as the basis on which all creditors are to draw dividends is the amount of their claims at the time of the declaration of insolvency, it necessarily results, for the purpose of fixing that basis, that it is immaterial what collateral any particular creditor may have. The secured creditor cannot be charged with the estimated value of the collateral, or be compelled to exhaust it before enforcing his direct remedies against the debtor, or to surrender it as a condition thereto, though the receiver may redeem or be subrogated as circumstances may require."

The order and decree appealed from are reversed, and the cause remanded to the court below for such further proceedings as may be necessary or proper, and that are not inconsistent with the views above expressed—costs in this court to the appellant.