## LEWIS v. INGRAM.

## INGRAM v. LEWIS.
### Nos. 494, 544.

Circuit Court of Appeals, Tenth Circuit.
March 24, 1932.

R. Emmett Stewart and J. Bernard Smith, both of Muskogee, Okl., for Philip A. Lewis.

Eliot D. Turnage, of Muskogee, Okl. (Charles A. Chandler, of Muskogee, Okl., on the brief), for Leonard Daniel Ingram.

Before COTTERAL and McDERMOTT, Circuit Judges, and KENNAMER, District Judge.

McDERMOTT, Circuit Judge.

Leonard Ingram, a Creek Freedman, was the beneficiary of an express trust; the defendant was one of his trustees. He alleges that the defendant Lewis conspired with one Wesley and one Atkins to procure dominion over his property and to convert it to their own use; that the trust was created as a result of such conspiracy; that defendant was unfaithful to his trust; that in eighteen months, the trustees had converted to their own use more than $80,000 in cash and property. It is then alleged that, having so

despoiled him, they forced him to execute instruments of release, a dismissal of another action with prejudice, and an acknowledgment that the amounts converted were compensation for services rendered, by threatening to withhold from him all his money and property until he did sign. The prayer of the bill was for a cancellation 'of such instruments of release, and for an accounting.

The defendant, by his answer, admitted the creation of the trust, but denied all charges of conspiracy, conversion, and infidelity. He admits the receipt of certain moneys, but alleges that Ingram, with independent advice, paid him such sums on account of advancements theretofore made by defendant, and as compensation for his services as trustee; the answer sets up the releases referred to in bar of plaintiff's claim.

The first trial on these issues was had in 1928. At the conclusion of the plaintiff's evidence, the trial court dismissed the bill. That order was reversed by this court, and the case remanded for a new trial. Ingram v. Lewis (C. C. A.) 37 F.(2d) 259, 70 A. L. R. 702, certiorari denied 282 U. S. 842, 51 S. Ct. 22, 75 L. Ed. 747. We there held that the bill stated a cause of action in equity; that the plaintiff's evidence was responsive to the bill, and directed that the trial court should hear all the evidence and determine the issues of fact presented.

The case has now been retried. The plaintiff's evidence was essentially the same as that detailed in our former opinion. The defendant's witnesses testified that Ingram had been spirited out of the country, and that the trust was created immediately upon his return; that defendant had furnished the money for the European trip, and had met him at New York upon his return; that defendant was present when the trust deed was executed, and participated in the payment of the $20,000 made that day. Defendant claims that all this was done to protect Ingram from crooks and grafters that he states abound in the old Indian Territory. Defendant admits that he was an active trustee, and admits the receipt of certain moneys, but asserts that he received only a fair compensation for his services, and the return of certain advancements; he alleges that when Ingram paid out these sums, he did so with independent advice. On the important issue of duress in obtaining the releases, there was a sharp conflict in the evidence. In a supplemental answer, defendant pleaded, and by his evidence proved, that Ingram had brought an action against a

cotrustee, Wesley, and Atkins, an attorney for the trust, in the United States court for the Southern District of Texas, for the same wrongs as herein complained of, and had been unsuccessful. Ingram v. Wesley (C. C. A. 5) 37 F.(2d) 201.

The trial court found generally for the plaintiff, and specifically that the signature of the plaintiff to the deed of trust and other papers executed at that time, and to the various releases, was procured by fraud, duress, and misrepresentations made by defendant Lewis, and that Lewis was not faithful as a trustee to plaintiff Ingram, and that in the administration of said trust he was guilty of bad faith. A decree was entered awarding plaintiff the sum of $35,000.

█ Lewis, appellant in No. 494, urges many reasons why the decree should be reversed. Many of these reasons were urged upon us on the prior appeal. We adhere to our former opinion. But two of the many objections now raised need be considered. The first is, that the trial court erred in finding the facts in favor of plaintiff. The findings of a chancellor, who has heard the witnesses and observed their demeanor while testifying, are entitled to great respect and will not be disturbed unless it is clear that some serious mistake of fact has been made, or some error of law has intervened. Youngblood v. Magnolia Petroleum Company (C. C. A. 10) 35 F.(2d) 578. This presumption of correctness is strengthened in this case by reason of the fact that it was tried by the Honorable John C. Pollock, who has had a long experience in dealing with witnesses and with transactions of the sort here involved. Furthermore, a reading of the record satisfies us that his findings are sound.

██ The second point is that the judgment of the Texas court in favor of Wesley and Atkins is a bar to recovery against Lewis. Lewis was not a party to that suit, and Wesley and Atkins were not parties to this suit. The defendant, being neither a party nor privy to the Texas suit, is not concluded by that decree, and the contention that he may nevertheless plead it in bar to an action to which he is a party is unusual. Defendant cites those cases which hold that, where a claim against a principal is founded solely upon the doctrine of respondeat superior, a final judgment exonerating his agent from fault will bar a subsequent action to hold the principal for his agent's wrong. New Orleans & N. E. R. Co. v. Jopes, 142 U. S. 18, 12 S. Ct. 109, 35 L. Ed. 919; Williford v. Kansas City, etc., R.

Co. (C. C.) 154 F. 514; Portland Gold Min. Co. v. Stratton's Independence (C. C. A. 8) 158 F. 63, 16 L. R. A. (N. S.) 677; Emma Silver Min. Co. v. Emma Silver Min. Co. of New York (C. C.) 7 F. 401; Hayes v. Chicago Tel. Co., 218 Ill. 414, 75 N. E. 1003, 2 L. R. A. (N. S.) 764; Cressler v. Brown, 79 Okl. 170, 192 P. 417; 34 C. J. 988, par. 1407. But that is not this case. This suit is not grounded on any vicarious liability of Lewis. Lewis was an actor from the inception of the plan to get possession of Ingram's property; he was an active and managing trustee, and is held for his own wrongdoing. A part of the maladministration consisted in paying exorbitant fees to attorneys employed by the trustees, and who are alleged to be cocouspirators. The liability of Lewis for such payments is personal, and does not rest upon the doctrine of respondeat superior. The cited cases are therefore without application. Lewis, his cotrustee, and attorneys employed by the trust, are charged with conspiracy to despoil Ingram of his estate; they are charged as joint tort-feasors. Although the authorities are not altogether in harmony, it is settled law in the courts of the United States that a judgment in favor of one of two joint tortfeasors does not bar an action against the other on the same facts. Mr. Justice Lurton dealt with this question at length in Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U. S. 111, 129, 32 S. Ct. 641, 643, 56 L. Ed. 1009, Ann. Cas. 1913E, 875. The reasons advanced by him are persuasive, and his opinion has been many times cited, always with approval. His conclusion, tersely stated, is a complete answer to the contentions now made. The learned justice said: "But, as we shall later see, the sounder reason, as well as the weight of authority, is that the failure to recover against one of two joint tort-feasors is not a bar to a suit against the other upon the same facts."

That another trial court, hearing what we assume to be substantially the same evidence, came to a conclusion that fraud had not been proven, is a circumstance worthy of serious consideration; but it does not relieve the trial judge from the duty of exercising his own judgment as to the facts, nor foreclose him from finding that there was bad faith. We conclude that the appeal of Lewis is without merit.

The Cross-Appeal of Ingram.

■ The only error specified on the cross-appeal is that the decree should have awarded the plaintiff $80,283.13 instead of $35,000.

The plaintiff contends that he is entitled, as a matter of law, to the return of (a) all sums paid the defendant as compensation and for expenses incurred, (b) all sums paid him in return for advancements, (c) all sums received by his cotrustee for services and expenses, and (d) all sums paid out by the trustees to attorneys for services and expenses,—a grand total of $80,283.13, including the value of the real estate and mortgage transferred to the trustees and their attorneys. Attention is directed to the fact that in the conclusion of law in which the trial court found that plaintiff was entitled to recover $35,000, there appears in parentheses the expression "(being the $25,000 to Wesley and Atkins and the $10,000 to defendant Lewis himself, paid by him on February 23, 1926)." The decree, however, contains no similar expression; our task is to ascertain whether the award is consonant with the record and established equitable principles, and not whether the trial court's reasons therefor are sound in all respects.

■ An unfaithful trustee is not entitled to any compensation for his services. Walker v. Walker, 9 Wall. 743, 19 L. Ed. 814; Barney v. Saunders, 16 How. 535, 14 L. Ed. 1047; In re Polansky (D. C.) 41 F.(2d) 547; In re Kline's Estate, 280 Pa. 41, 124 A. 280, 32 A. L. R. 926; 26 R. C. L. 1393; 39 Cyc. 495. It does not, however, follow that he forfeits moneys advanced by him to the trust fund. This rule is not contravened by the trial court, for the allowance is much in excess of all sums received by the defendant as compensation for his services. It is likewise a settled rule that, "where one of two co-trustees assents to a breach of trust by the other without objection, he is legally chargeable with liability for the breach." May v. Henderson, 268 U. S. 111, 114, 45 S. Ct. 456, 69 L. Ed. 870; Bermingham v. Wilcox, 120 Cal. 467, 472, 52 P. 822; In re Niles, 113 N. Y. 547, 21 N. E. 687; Hill v. Hill, 79 N. J. Eq. 521, 82 A. 338. From this rule, plaintiff argues that a defaulting trustee is liable for compensation paid his cotrustee. Under the circumstances of this case, we have no doubt that defendant is liable for any compensation paid his cotrustee. But only $2,200 was paid Wesley as trustee, and the award is in excess of the amounts paid both trustees.

■ We come then to the claim that defendant is liable for all sums paid the law firm of Wesley & Atkins for legal services rendered to the trust estate, and for all the expenses incurred by said attorneys. The

attorneys were found to be parties to the general plan, and it is undoubtedly true that each conspirator is jointly and severally liable for all damage resulting from the conspiracy. The plaintiff could have sued at law for damages resulting from the conspiracy; if he had established the conspiracy to the satisfaction of a jury, that body would have assessed the damage. But plaintiff saw fit to declare on the trust and has asked for an accounting, and the case must be determined on principles applicable to such an accounting, and not by the measure of damage which might obtain in an action at law. The defendant must account for all moneys or property received, and is entitled to credit only for proper outlays. An attorney's fee may be a proper outlay, and just as essential to the preservation of the estate as premiums paid for fire insurance. The plaintiff properly makes no objection to considerable sums paid out by the trustees for insurance premiums, and for labor and services necessary to keep buildings in repair and the like. Likewise, no objection can properly be made to reasonable sums laid out by way of attorney's fees to protect the estate.

▉ Laying aside repayment of advances and expenses incurred, it appears that the trustees were paid approximately $17,500 as compensation. The decree therefore charged defendant with $17,500 paid out to attorneys. The total attorneys' fees paid, exclusive of expenses, was approximately $54,000. The decree therefore allows approximately $36,500 as a proper outlay for attorney's fees for the period of the trust. On the face of it, this allowance seems to be liberal, to say the least. But the estate was a large one; the net worth of the estate was nearly $400,000, invested largely in farms. The gross cash income for the year 1925 was nearly $68,000. A great deal of necessary legal work is involved in handling such an estate. The record discloses necessary legal work in procuring income tax refunds of consequence; in attending to much litigation, among which was one suit to recover several million dollars. There is no slide rule by which attorney's fees can be calculated with precision. The record in this case is not as satisfactory as it might be upon this point; and while we do not look with favor upon large attorney's fees exacted from those who are illy equipped to look after themselves, and while we have considerable hesitancy in approving of this allowance, yet we are not prepared to say that it is without substantial support in the record. The fact that the attorneys had been sued

in Texas, and that the learned chancellor in that suit found that they were not indebted to plaintiff, may be a circumstance that weighed with the court below. Of that we do not know; we do know that the trial court heard the evidence in this troublesome case, and entered a decree which appeared to him to do substantial justice. We are not disposed to disturb the award made.

▉ The defendant contends that the findings of fact and conclusions of law, made by the trial judge, are of no force and effect because not copied in extenso in the decree; that the trial court's finding of fraud and duress is colorless because it is labeled a "conclusion of law"; and that the evidence does not support the findings. There is no merit in these contentions. Equity rule 71. Defendant overlooks the nature of an appeal in equity; the record is before us, with the trial court's finding for the plaintiff after seeing the witnesses; from that, we make such disposition of the cause as accords with equity and good conscience.

The decree is therefore, in all respects, affirmed.