IN RE ESTATE OF WILLIAM H. SMITH.

No. 44640.

JANUARY 16, 1940.

REHEARING DENIED MAY 18, 1940.

W. W. White and F. E. Northup, for appellants.

Lee & Walsh and Carr, Cox, Evans & Riley, for appellee.

OLIVER, J.—On February 17, 1930, William Whisler was appointed and qualified as executor of the estate of William H. Smith of Williams, Iowa, who died in December 1929. This is an appeal from a ruling approving the final report of said executor and· overruling objections thereto and involves only one asset of the estate, to wit: a certificate of deposit issued to decedent by the First National Bank· of Williams, Iowa, for $8,625, dated March 5, 1929, due March 5, 1930, which with accrued interest then amounted to $9,056.25. Said certificate of deposit had been left by decedent with L. E. Pound, cashier and manager of said First National Bank, from whom Whisler secured it shortly after his appointment.

Without the knowledge of Whisler, or anyone else, Pound had misappropriated about $25,000 of the bank's funds. The principal method he employed in accomplishing this was by issuing two or more certificates of deposit bearing the same number, only one of which, in each instance, was shown upon the records of the bank. Pound converted to his own use the deposited money represented by the duplicate certificates. One of the certificates not shown upon the records was the $8,625 certificate here involved, issued to decedent March 5, 1929. In the same category were certificates issued to various other parties of a total principal amount of about $15,000.

On June 30, 1930, the bank went into receivership. Whisler who had not cashed the certificate of deposit of the Smith estate prepared to file claim upon it. It was then discovered the certificate was not shown upon the bank records and the actions of Pound were brought to light. On account of his "irregularities" Mr. Pound was subsequently incarcerated at Leavenworth. Whisler eventually secured the allowance of the claim and total dividends of about 30 percent were paid upon it and by him accounted for as executor of the Smith estate. Objectors contend Whisler, as executor, should be required to account for the full amount of the certificate with interest.

Whisler was a lawyer by profession and at the time in controversy was living in the neighboring town· of Alden, where he was engaged in the banking· business as president of the

Alden Savings Bank. For a number of years he had been a director of First National Bank of Williams and owned $1,500 of its $25,000 stock. He had formerly been vice-president of said bank, but had ceased to hold that position in January 1929. Although he was a director and may have attended some meetings of the board he apparently had no active connection with the operation of the bank and his knowledge relative to its condition was based principally upon its records and statements and information given him by Pound. Whisler, two other directors and Ruth Martinson, the assistant cashier and vice-president, all testified they did not know the bank was insolvent prior to the time it closed. All these parties appear to have had confidence in the integrity of Pound, none of them knowing he had misappropriated funds of the bank in an amount equal to its entire capital.

About 1935 one of the beneficiaries under the Smith will instituted proceedings to remove Whisler as executor alleging, among other grounds, negligence on his part in failing to cash said certificate of deposit. That case was appealed to this court and is entitled In re Estate of Smith, 223 Iowa 172, 271 N. W. 888. It may be noted that although said decision is not determinative of the propositions actually here in controversy the pleadings and part of the evidence in that case appear in this record. Mr. Whisler having died in 1935, the legal representative of his estate made his report and accounting in the Smith estate. Upon the issues raised by said report, objections by the administrator with will annexed and beneficiaries under the Smith will and the answer thereto, this trial was had.

The main issue was whether or not Whisler was shown to have exercised due diligence as executor in handling the certificate of deposit. The trial court found the loss to the estate was not brought about by any negligence, fraud or lack of good faith upon his part, the objections were overruled and the report was approved. From this ruling objectors have appealed.

■ I. This is a law action and is not triable de novo upon appeal. The decision has the effect of a verdict of a jury and

will be affirmed if it finds substantial support in the record. In re Estate of Jefferson, 219 Iowa 429, 257 N. W. 783.

■ II. Appellants predicate error upon the finding of the trial court that the loss to the estate was not brought about by the negligence of Whisler or his lack of good faith. In this connection appellants contend that, regardless of Whisler's actual knowledge of the condition of the bank, such knowledge should be imputed to him as a director. Among the cases cited upon this proposition are In re Estate of Enfield, 217 Iowa 273, 251 N. W. 637; In re Estate of Kendrick, 214 Iowa 873, 243 N. W. 168; Leach v. Beazley, 201 Iowa 337, 207 N. W. 374; In re Estate of Rorick, 218 Iowa 107, 253 N. W. 916; Baumchen v. Donahoe, 215 Iowa 512, 242 N. W. 533.

Each of the foregoing cases differ factually from the case at bar. In all of them the presumption of knowledge of the condition of a bank was held to apply to executive officers, either in active charge or heavily interested in the bank. In each of the cases involving estate funds, all or a part of said funds were by the fiduciary placed in a bank under his executive control.

Whisler's interest in the First National Bank of Williams was a small percentage of the total and he took no active part in its management. He did not have actual control of its assets or disbursements. His primary interest was in the Alden Savings Bank which he was operating as president. That was his bank. Had he cashed the certificate in the Williams Bank, and deposited the proceeds in his own Alden Savings Bank, we would then have had a fact situation to which the cited cases might properly apply.

Appellee relies upon a rule adopted in Commercial Sav. Bank v. Kietges, 206 Iowa 90, 219 N. W. 44, cited with approval in Preston v. Howell, 219 Iowa 230, 248, 257 N. W. 415, 424, 97 A. L. R. 1140.

'' 'There is no rule of law which charges a director or stockholder of a corporation with actual knowledge of its business transactions merely because he is such director or stockholder.' ''

Under the circumstances of this case we do not think Whisler should, as a matter of law, be charged with knowledge of the insolvent condition of the First National Bank of Williams.

III. On March 6, 1930, the day after the certificate matured, Whisler presented it to Pound for payment. Pound said he could not pay it then, that they were low on cash and that he would have to lock up the bank if payment were insisted upon. Pound also told Whisler that they were gaining, that the bank was just as strong or better than it ever was, that many of the bank's debtors would soon be selling corn and hogs to pay their obligations and he thought he would be able to take up the certificate within a short time.

Whisler again presented the certificate for payment and was told by Pound the farmers had not yet sold their produce and had not paid their notes as he expected they would and that the bank was low on cash and he could not pay the certificate that day. Sometime during June Whisler again presented the certificate, this time to Miss Martinson, the assistant cashier, and was told the cash then available was insufficient to pay it.

This cash available consisted of actual cash in the bank and deposits in correspondent banks. It amounted to about $23,000 on March 5th and thereafter fluctuated up and down from said amount. By the middle of May it had dropped to about $15,000, and by the latter part of June to less than $10,000. The total deposits of the bank during this period were approximately $125,000 or $150,000.

The first and second times Whisler presented the certificate the bank had cash assets sufficient to have paid it. Perhaps its payment might have reduced the cash to below a safe margin. However, it is not an unfair inference that this was not the real reason for the attitude adopted by Pound. From a practical standpoint the certificate was his personal obligation. It may be reasonably assumed he was unable to pay the $9,000 out of his own pocket. In any event he was not so inclined. That he could not use the funds of the bank without disclosing his defalcation is evident. These circumstances compelled him to post-

pone payment and secure delay by any possible means. The certificate was enforceable against the bank, but, without fault of Whisler or any knowledge on his part, the fraud of Pound had so affected it that Pound dare not pay it from the assets of the bank during the brief period when such cash assets may have been sufficient. This unusual situation should be taken into consideration in determining whether or not the record supports the finding of the trial court.

Whisler did not have personal charge or control of the operations of the First National Bank of Williams. He was not in a position to go into the vault and take the cash or to draw upon a depository bank for the amount due on the certificate of deposit. The manner in which he made presentment of the certificate for payment is indicative of no connection with the bank relative to said deposit other than that of depositor.

The facts in this case do not bring him within the specific rule of liability enunciated in In re Estate of Enfield, above cited, and similar cases cited therewith, relating to deposits by a bank officer in his own bank of funds held by him in a fiduciary capacity. Instead, Whisler's liability should be measured by the general rule referred to in the Enfield case, 217 Iowa 273, at page 274, 251 N. W. 637, and cases there cited:

"The duty of an administrator or other trustee in such cases is well settled in this state. Such officers are not insurers of the safety of the funds coming into their possession by virtue of their respective offices, but they must exercise that degree of care and prudence with reference thereto that ordinarily prudent men exercise in regard to their own affairs."

The trial court found the loss to the estate was not due to any negligence, fraud or lack of good faith of Whisler. Reference has been herein made to some of the evidence supporting such finding. A discussion of various other propositions contained in the record and presented in argument is unnecessary.

There was conflicting evidence. However, this is not a trial de novo. If there is substantial evidence to support the ruling

of the trial court, it will be affirmed. We conclude the record amply supports the ruling in this case.

Wherefore, the order is affirmed.—Affirmed.

All JUSTICES concur.