## CITIZENS BANKING CO. et al. v. MONTI-CELLO STATE BANK.

### No. 12688.

Circuit Court of Appeals, Eighth Circuit.

June 14, 1944.

262

Carl H. Lambach, of Davenport, Ia., and Robert Sidney Milner, of Cedar Rapids, Ia., for appellee.

Before STONE, THOMAS, and JOHNSEN, Circuit Judges.

STONE, Circuit Judge.

This is a class action by twelve banks against the Monticello State Bank in behalf of themselves and all other holders of collateral trust notes issued by the Commercial Investment Company and, under the terms of a trust indenture, certified by the Monticello State Bank as trustee. The basis of the action is various acts and omissions alleged to be breaches of trust by the trustee Bank. Defendant filed a consolidated motion made up of a motion to dismiss, a motion to strike, an alternative motion to strike, and a motion to make definite and certain and for a bill of particulars. The motion to dismiss was sustained with leave to apply to file an amended complaint in conformity with an opinion then filed. The opinion stated that the allegations in the petition did not entitle plaintiffs to proceed in equity or in a class action but that plaintiffs might apply to file an amended complaint in tort based upon the fraud of the defendant in certifying notes issued to them after it had knowledge of the alleged violations of the trust indenture by the Investment Company. From such order of dismissal, plaintiffs bring this appeal. The motion to dismiss was on three grounds: lack of jurisdiction over subject matter, lack of jurisdiction over the person of defendant, and failure to state a cause of action upon which relief could be granted.

### Jurisdiction.

While appellants argue the ground concerned with jurisdiction of the person of defendant, there could be no serious doubt that such jurisdiction existed and we understand appellee makes no contest here as to that. The main controversy as to jurisdiction is whether or not this is properly a class action.

Rule 23 of Rules of Civil Procedure, 28 U.S.C.A. following section 723c, sets forth the situations which permit class actions.[1]

Harold K. Bell, of Cleveland, Ohio (Owen N. Elliott, V. Craven Shuttleworth, Tyrrell M. Ingersoll, Grimm, Elliott, Shuttleworth & Ingersoll, all of Cedar Rapids, Ia., and Spieth, Taggart, Spring & Annat, of Cleveland, Ohio, on the brief), for appellants.

[1] The pertinent part of that Rule is as follows:

"(a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) joint, or common, or secondary

To determine whether or not this is a class action within the Rule, it is necessary to know what the action is about and the interrelation of the plaintiffs thereto. The cause of action in some detail will be hereinafter set out in connection with examination of the sufficiency of the petition to state a cause of action. For the immediate purpose, it is enough to state a general outline of the petition.

The notes were issued by the Company [2] subject to certification and registration by the Bank, which certification on the notes stated that the note was "one of the collateral trust notes described in the within mentioned Trust Indenture." The Trust Indenture was identified in and, by reference, incorporated in the note, which stated, also, that "under the terms of the Trust Indenture the corporation [Commercial Investment Co.] has agreed to transfer to and deposit with the Trustee collateral security and/or cash to insure the payment of said notes and interest equally and ratably without any preference or distinction by reason of number, time of issue or maturity." The Trust Indenture expressly stated that these notes were "secured by collaterals deposited with the Trustee"; that described collateral at par value in ratios of 100% or 120% (depending on character of collateral) of face value of outstanding notes was to be so deposited; that all collateral deposited is as security for "all such notes" and "no specific collateral is security for any particular note or notes"; that the Trustee was empowered, "in its discretion," to reject or require withdrawal of any collateral "even though under the terms hereof said collateral complies with all requirements herein specified"; that the Company covenanted that the aggregate principal amount of such outstanding notes and all other indebtedness by it (with certain exceptions) should never exceed three times the then unimpaired capital, surplus and undivided profits of the Company; that the Company would not redeem, retire or purchase any of its capital stock if it were in default under the Indenture or if such would affect the above three to one ratio; that described acts should constitute default by the Company; that, upon default, the Bank should "have the right to (either with or without the request of any holder of any such registered note or notes) collect, sell and enforce any or all of said securities securing all the said Collateral Trust Notes outstanding, so deposited with it, either in the name of the Corporation [Company] or in the name of the trustee," either at private or public sale, "but only after the Trustee has made not less than fifteen (15) days demand, in writing, of the Corporation for any default"; that the net proceeds of such sale (less Trustee's fees and expenses) should be paid pro rata to holders of registered notes, with any balance over to the Company; that the Trustee has the right to terminate the Indenture by notice that it will, after sixty days, cease registration of notes and, "thereafter when all notes theretofore registered under the terms of this Indenture, have been paid in full with all interest thereon or otherwise liquidated and all reasonable expenses and charges of the Trustee have been paid by the Corporation, the residue of said securities so deposited with the Trustee shall be returned to the Corporation"; that all costs, expenses and attorneys' fees incurred by the Trustee "in enforcing this Indenture, or any of the rights or duties of the Trustee herein" shall be primary obligations and be paid by the Corporation; and that "the Corporation agrees to furnish the said Trustee with an annual audit by certified public accountants, and to give said Trustee accessibility to the books and records of said Corporation with relation to said Trust, and hereby agrees to furnish such other information and reports as requested by said Trustee from time to time." The petition alleges that all of the notes so secured have matured; that there have been various specific violations of duty and obligation by the Bank as trustee; that such violations resulted in reduction of collateral value to about $30,000.00 from the required minimum of $235,100.00 (the aggregate of outstanding notes); that this collateral had,

in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

"(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

[2] Commercial Investment Company and the Monticello State Bank will be referred to, respectively, as the "Company" and as the "Bank" or the "trustee."

under court order, been turned over to a receiver of the Company appointed by an Iowa State court; that the owners of such notes will, suffer a loss of at least $205,-100.00 plus interest "due to the failure of the defendant to reasonably perform its, duties as trustee as aforesaid." The relief prayed was (a) an account of all money and security received by the trustee under the indenture; (b) an accounting and determination of the amount of loss caused by these acts and conduct of the trustee with an order "to reimburse said trust for such loss"; (c) an accounting of the amount due on collateral trust notes secured by this indenture and the lawful owners thereof; (d) "that some proper person may be appointed to receive and collect all moneys which may be coming to the credit of said trust, and that the defendant may be ordered to pay to such person, for the benefit of the lawful holders of said collateral trust notes, the amounts that may be found due them with interest thereon as may be determined, and that judgment may be entered against the defendant therefor"; (e) judgment for $235,100 with interest from October 28, 1940; (f) "for such orders and processes as may be necessary to enforce the payment by defendant of such sums as may be found due from it to the lawful holders of said collateral trust notes"; for general relief.

Concisely stated, the situation for relief stated in the petition is that plaintiffs are some of a number of holders of collateral trust notes secured by defined classes of securities transferred by the maker of the notes in trust to the Bank under a trust indenture stating the conditions of the trust and the rights, duties, powers and obligations of the trustee; that all such securities are to secure commonly all noteholders without distinction or difference; that the trustee has, in violation of its duties and obligations, allowed or caused this trust fund to be badly diminished; and that such diminution has resulted in loss to all such noteholders alike. The relief is that there be determined the amount to reimburse the loss so resulting and that such be paid an appointed person for payment to noteholders ascertained to be entitled to share therein. In essence, this is an action to restore a trust fund wrongfully dissipated by a trustee and to distribute the proceeds to holders of the class of notes secured thereby who are entitled to share in this common fund upon an undivided pro rata basis.

■ This is an action properly cognizable in equity to avoid a multiplicity of actions and for accounting of a trust fund (Dillman v. Hastings, 144 U.S. 136, 140, 12 S.Ct. 662, 36 L.Ed. 378; Irvine v. Dunham, 111 U.S. 327, 334, 4 S.Ct. 501, 28 L. Ed. 444; City of Jacksonville v. Bankers Life Co., 7 Cir., 90 F.2d 141, 144; Lewis v. Ingram, 10 Cir., 57 F.2d 463, 466, certiorari denied 287 U.S. 614, 53 S.Ct. 16, 77 L.Ed. 533; Ingram v. Lewis, 10 Cir., 37 F.2d 259, 260, 70 A.L.R. 702, certiorari denied 282 U.S. 842, 51 S.Ct. 22, 75 L.Ed. 747). That the relief asked is in money does not affect the right of the beneficiaries to proceed in equity (Lewis v. Ingram, 10 Cir., 57 F.2d 463, 466, certiorari denied 287 U.S. 614, 53 S.Ct. 16, 77 L.Ed. 533)—such money recovery is usually the only way of replacing a trust fund where other character of property therein has been dissipated.

■ This is properly an instance for application of the "class" or "representative" action authorized by Rule 23(a). The allegation of the petition is that the holders of these notes "are so numerous as to make it impractical to bring them all before the court." This allegation is not weakened but strengthened by an affidavit of appellee (attached to its motion) that the actual number is forty. The purpose of this action is to protect a single trust fund in which no noteholder has a particular or separate interest but in which the interest is common and undivided with rights only of pro rata participation. These plaintiffs are fairly representative of all noteholders. There are no divergent interests among the noteholders as to the purposes of this action. The petition seeks to assert a right common to all noteholders. The situation comes fairly within numerous decisions, among which are Hansberry v. Lee, 311 U.S. 32, 44, 45, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741; Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111; Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673; Hartford Life Ins. Co. v. Ibs, 237 U.S. 662, 672, 35 S.Ct. 692, 59 L.Ed. 1165, L.R.A.1916A, 765; Troy Bank v. G. A. Whitehead & Co., 222 U.S. 39, 40, 32 S.Ct. 9, 56 L.Ed. 81; McDaniel v. Traylor, 196 U.S. 415, 428, 25 S.Ct. 369, 49 L.Ed. 533; Overby v. Gordon, 177 U.S. 214, 20 S.Ct. 603, 44 L.Ed. 741; Texas & Pac. Ry. Co. v. Gentry, 163 U.S. 353, 363, 16 S.Ct. 1104, 41 L.Ed. 186; Davis v. Schwartz, 155 U.S. 631, 647, 15 S.Ct. 237, 39 L.Ed. 289; New Orleans Pac. Ry. Co.

v. Parker, 143 U.S. 42, 51, 12 S.Ct. 364, 36 L.Ed. 66; Handley v. Stutz, 137 U.S. 366, 369, 11 S.Ct. 117, 34 L.Ed. 706; Davies v. Corbin, 112 U.S. 36, 40, 5 S.Ct. 4, 28 L.Ed. 627; Ex parte Baltimore & Ohio R. Co., 106 U.S. 5, 6, 1 S.Ct. 35, 27 L.Ed. 78; The Connemara, 103 U.S. 754, 26 L.Ed. 322; Shields v. Thomas, 17 How. *3, 15 L.Ed. 93; Smith v. Swormstedt, 16 How. 288, 303, 14 L.Ed. 942; Eresch v. Braecklein, 10 Cir., 133 F.2d 12, 13; Grand Rapids Furniture Co. v. Grand Rapids Furniture Co., 7 Cir., 127 F.2d 245, 252. The case of Boesenberg v. Chicago T. & T. Co., 7 Cir., 128 F.2d 245, 141 A.L.R. 565; dealt with practically the same general fact situation as here.

■ There is another matter concerning jurisdiction. The petition alleges that the Bank "proceeded to act as trustee thereunder until the 28th day of October, 1940, on which day one Nathan Grant, of Davenport, Iowa, was appointed receiver of all of the property and assets of said Commercial Investment Corporation by an order in the District Court of the State of Iowa in and for Scott County, and thereupon defendant, without contesting the order, although obligated as trustee so to do, turned over and delivered to said receiver all of the collateral security that defendant was holding as trustee under said trust indenture pursuant to said order entered by said court." A further averment is that "plaintiffs say that they are informed by said Nathan Grant, receiver, and therefore believe, that the liquidation of said collateral security by said receiver and the liquidation of the general unpledged assets of said Commercial Investment Corporation will not realize more than Thirty Thousand Dollars ($30,000.00) for the benefit of the holders and owners of said collateral trust notes."

Appellee contends that the entire and exclusive jurisdiction over the administration of this trust is in the Scott County District Court; and that, the only remedy of appellants is to apply for action by the receiver against the Bank for the relief sought here. Appellee cites In re Estate of Strasser, 220 Iowa 194, 262 N.W. 137, 102 A.L.R. 117. This case involves the situation of a trust company and what results to the administration of the trusts of which it is trustee when it becomes insolvent and a receiver for it is appointed. The case has no bearing on the situation here where the creator of the trust is in receivership.

■ The obvious purpose of these allegations in the petition was to charge the Bank with dereliction in its duty as trustee for not opposing delivery of the trust assets to the receiver. This Court has determined that the funds and administration of mortgaged property does not pass to a receiver of the mortgagor until the mortgage debt is entirely satisfied (First Union Trust & Savings Bank v. Bernardin, 8 Cir., 60 F.2d 419 and Carey v. McMillan, 8 Cir., 289 F. 380, 384; also see City of Philadelphia v. Lieberman, 3 Cir., 112 F.2d 424, 426, certiorari denied 311 U.S. 679, 61 S.Ct. 48, 85 L.Ed. 438; International Banking Corp. v. Lynch, 9 Cir., 269 F. 242). Obviously, a trustee of an instrument of this character cannot terminate the trust nor relieve itself of its duties and liabilities as trustee by turning over the trust assets to the receiver of the creator of the trust. Nor can such action deprive the beneficiaries of the trust of any of their rights or remedies thereunder. The situation here would seem peculiarly saved from the result urged by appellee because (1) a receiver takes the property subject to all liens and incumbrances; (2) he is interested only in any balance over and above the security necessary to and used in fully satisfying the secured debt; (3) under the allegations here there can be no such balance; (4) no such balance could, if it existed, be or is sought to be recovered under this petition; and (5) no recovery is sought against general assets of the Company.

Our conclusion is that the trial court had jurisdiction of the action pleaded in the petition.

### Sufficiency of Petition.

■ The essentials of the cause of action stated in the petition are as follows. Plaintiffs and others are holders of matured collateral trust notes issued by the Company under a trust indenture whereby the Company agreed to transfer to and deposit with the trustee collateral security and or cash to insure the payment of the notes and interest thereon. The notes and the indenture provided that notes should not be valid until certified and registered by the trustee as being issued under the indenture. The indenture provided that the Company would at all times keep on deposit with the trustee certain types of securities in the

ratio of 120% or 100% of the face value of issued notes.[3] If the principal of any deposited collateral, or any instalment thereof, should remain unpaid 60 days after the first of the month during which it was payable, the Company should cease to be entitled to credit, as such collateral, for the amount so unpaid; and if such default continued 90 days or if two or more such instalments remained unpaid for 60 days, the Company should "forthwith" deliver to the trustee an equal face value of collateral in lieu thereof. Notwithstanding any provisions in the indenture, the trustee might "in its discretion, reject or require the corporation to withdraw any collateral offered for deposit or deposited hereunder, even though under the terms hereof said collateral complies with all requirements herein specified, and may refuse to authenticate any notes upon the basis of collateral delivered to it." The trustee had no obligation to examine or determine the validity of any collateral or whether such was acquired by the Company in the usual course of business but was authorized to act upon certificates of the Company that the collateral was validly issued and the liens were valid. When not in default in maintaining the minimum amount of security or in performing any other obligation under the indenture, the Company could collect interest and principal thereon and make substitutions provided the minimum amount was not reduced. The aggregate principal amount of such collateral and all other loans by the Company, with certain exceptions, should not exceed three times its then unimpaired capital, surplus and undivided profits. So long as any collateral notes were outstanding, the Company should not redeem, retire or purchase any of its capital stock, unless it is not in default under the indenture and unless it continues to maintain the above three to one ratio. On default by the Company in payment of any registered note or in keeping on deposit the required amount and kind of securities or in complying with any term of the indenture, "the Trustee shall have the right" to collect, sell and enforce any or all of such securities and, after payment of its reasonable fees and expenses, it shall pay such proceeds pro rata to legal holders of such notes and, after full payment, any

balance to the Company. The Company was required to keep on file with the trustee complete lists of all securities deposited; to make bi-monthly reports to the trustee of all collections made by it on principal of deposited securities; to furnish the trustee an annual audit of its affairs; and to furnish such other reports and information as might be requested by the trustee from time to time. The trustee had the right to terminate the indenture on sixty days notice that it would discontinue registration of notes after that period and, after all registered notes had been fully paid or otherwise liquidated and its expenses and charges had been paid by the Company, the residue was to be returned to the Company.

With particularity, the petition alleges that the Company violated each of the above requirements of the indenture and the trustee continued to register notes when it knew or should have known and should have made investigation of such defaults; and that, as a consequence, the trust fund was wasted to the loss of the noteholders.

For the present purpose of determining the sufficiency of the petition, it is unnecessary to determine, in detail, which of the alleged defaults of the trustee are sufficient or whether all are and we expressly refrain from such examination. It is enough to treat the matter more broadly. The picture is clear. By the indenture and the notes issued and registered thereunder, a trust was created by the Company for the benefit of such noteholders. The parties thereto were the Company, the trustee and the noteholders. The dominant object of the trust was to provide and maintain unimpaired a trust fund to secure the notes. Described kinds of securities in stated ratios of value to the notes were to be placed in the trust fund. The method of assuring that such fund would be provided and so maintained, and the only method, was by placing in the trustee powers to require such provision and maintenance. No note was valid until certified and registered by the trustee and no note was to be certified and registered by the trustee unless there was, at the time, the required minimum of the required kind of securities on deposit with it. The trustee was broadly empowered, in its discretion, to "reject or require the corporation to withdraw any

---

[3] If the securities were certain kinds of described secured promissory notes or accepted drafts, the ratio was 120%. If the securities were certificates of deposit, cashier's checks of solvent banks or cash, the ratio was 100%. Deposits might be of both classes in their respective ratios.

collateral offered for deposit or deposited hereunder, even though under the terms hereof said collateral complies with all requirements herein specified, and may refuse to authenticate any notes upon the basis of collateral delivered to it." The trustee was empowered at will to terminate the indenture and cease certifying and registering notes and, if there was any default by the Company, to realize on the deposited securities and distribute the proceeds to the noteholders. The Company was obligated to furnish to the trustee certain reports as to information useful to the trustee in exercising its powers and, broadly, any such information required by the trustee.

There was no *expressed* duty on the trustee to exercise any of these powers and it was provided that the trustee was not obligated to "examine or determine" the validity of, title of the Company to, or the validity of the lien supporting such collateral securities. The situation that a trust indenture does not contain expressed powers or duties is not determinative as to the existence of such. From the relationship of the parties, the situation of the trust fund and the purposes of the trust, powers (In re Plankinton Bldg. Co., 7 Cir., 135 F.2d 273, 276; Crutcher v. Joyce, 10 Cir., 134 F.2d 809, 816; Village of Brookfield v. Pentis, 7 Cir., 101 F.2d 516, 522) and duties (Frishmuth v. Farmers' L. & T. Co., 2 Cir., 107 F. 169, 174; Rhinelander v. Farmers' L. & T. Co., 172 N.Y. 519, 536, 65 N.E. 499, 502; Savings Bank of New London v. New York Trust Co., 27 N.Y. S.2d 963, 972) may be implied as given to or imposed upon a trustee. Whether and what powers or duties are to be so implied must be gathered primarily from the instrument creating the trust. Such instruments are, within lawful range, to be so construed as to carry out the intention of the creator of the trust (Rand v. Helvering, 8 Cir., 116 F.2d 929, 932, certiorari denied 313 U.S. 594, 61 S.Ct. 1120, 85 L.Ed. 1548; Id., 314 U.S. 709, 62 S.Ct. 55, 86 L.Ed. 565). Construing this indenture, we find a trust relation established for the purposes of providing and maintaining a trust fund for the protection of notes issued thereunder; that such notes have no validity until certified and registered by the trustee; that the trustee is forbidden to certify or register any notes if the Company is in default as to payment of any note theretofore issued or if the minimum amount of the designated kinds of collateral security is not then in the fund; that powers (hereinbefore outlined) are given the trustee to assure the integrity of the fund; and that means of obtaining information in connection with the exercise of such powers are provided. Obviously, these powers were given the trustee for the purpose of protecting the trust fund upon the faith of which notes were invited to be and were purchased. Their existence was necessary to protection of such a fund which, in its nature and because of rights of substitution by the Company, was subject to change and fluctuation. The trustee was the only party which could afford such protection. Where such powers are expressly given for such purpose and under such circumstances, there is a corresponding duty on the trustee to use them to accomplish such purpose. Otherwise, the protection to noteholders held out in the indenture is a pretense and fraud. They have a right to rely upon the performance of such duties and may look to the trustee for any failure so to do. This duty does not make the trustee an insurer of the trust fund but it places upon it the obligation to use due diligence (Mayfield v. First Nat. Bank of Chattanooga, Tenn., 6 Cir., 137 F.2d 1013, 1018). The effect of these provisions in this indenture simply implies duties the law attaches to the status of trustees of a fund (United States Nat. Bank & Trust Co. of Kenosha, Wis., v. Sullivan, 7 Cir., 69 F.2d 412, 415; American Bonding Co. of Baltimore v. Richardson, 6 Cir., 214 F. 897, 901; In re Smith's Estate, 228 Iowa 47, 289 N.W. 694, 696; In re Enfield's Estate, 217 Iowa 273, 274, 251 N.W. 637, 638) by expressly furnishing some of the means to perform such duties. This petition contains numerous instances wherein it is alleged this trustee failed to exercise such diligence. A cause of action is pleaded.

The case is reversed and remanded with directions to vacate the order of dismissal and reinstate the petition for further proceedings.