HARRINGTON A. PINE & others *vs.* EDWIN M. WHITE
& another.

Suffolk.    December 5, 1899.—March 27, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER,
HAMMOND, & LORING, JJ.

*Alleged Delinquency in Management of Trust Estate.*

A trustee cannot be held liable for a mere error of judgment in making or failing
to make an investment unless the error is so gross as to show that he either acted
in bad faith or failed to exercise sound discretion.

In this case, which was a bill in equity to charge a trustee for failure to buy for
the trust estate property closely connected with it, which was offered for sale
for much less than its value, it cannot be said, in view of the uncertainties dis-
closed by the testimony and the opportunity that the judge had of seeing the
witnesses, that his decision in favor of the defendant was wrong.

BILL IN EQUITY, by Harrington A. Pine, the Massachusetts
Universalist Convention, and Frank W. Grinnell, trustee, against
Edwin M. White and Fanny F. White to charge the said Edwin
M. for delinquency in management of a trust under the follow-
ing residuary clause of the will of James A. Pine.

" After deducting the aforesaid expenditures, I give, bequeath,
and devise all the residue of my estate to said Jeremiah L.
Newton, his heirs and assigns, nevertheless in trust for the use
and benefit of my son Harrington A. Pine during his natural
life to be paid in the manner following, viz.: After deducting all
necessary expenses, charges of administration and taxes, I direct
my said executor and trustee to pay over to or expend for the
benefit of my said son the income of my said estate at such times
and in such manner as in his judgment he shall think best for
the interest and welfare of my said son so long as he shall live ;
and at his decease, after the payment of all burial charges and
suitable expenses connected therewith, to pay over or assign the
residue of said estate to the Massachusetts Convention of Uni-
versalists so called to be made use of by that body at their dis-
cretion either for Home Missionary work or for helping weak
societies.   And to make my said executor and trustee to manage
and control my said estate for the purposes and uses aforesaid, I

hereby empower and give him the right and power to lease or dispose of, if necessary in his judgment, any part or all of my said estate, and execute all deeds and papers necessary to pass title to the same, and invest and reinvest the proceeds derived therefrom in such manner and in such securities as he may think best for the uses and purposes aforesaid."

Trial in the Superior Court before *Hardy*, J., who found for the defendants and reported the case for the determination of this court. The facts appear in the opinion.

The case was argued at the bar in December, 1899, and afterwards was submitted on briefs to all the justices.

*R. W. Hale & F. W. Grinnell*, for the plaintiffs.

*T. J. Morrison*, for the defendants.

KNOWLTON, J.    This is a suit in equity to charge a trustee for delinquency in the management of the trust estate. It comes before us on a report which shows certain special findings of fact in favor of each of the parties, and a general finding that on the whole evidence there should be a decree for the defendants.

A brick house in Boston had belonged to Caroline Pine, who had died intestate on February 22, 1879, leaving her husband, James A. Pine, and two sons, Harrington A. Pine and Henry C. Pine of Worcester. Harrington A. Pine conveyed his interest in the house to his father, James A. Pine, who died on July 4, 1882, leaving a will by which he made one Newton his executor and trustee. Newton qualified as executor but not as trustee, and died before August, 1884. His widow was appointed administratrix of his estate soon after his death. On September 22, 1884, the defendant, Edwin M. White, was appointed trustee under the will of James A. Pine, and on November 17, 1884, administrator with the said will annexed. The undivided half of the brick dwelling-house in Boston conveyed by H. A. Pine to his father, passed to the trustee under the residuary clause of the will, and formed a part of the trust estate when White was appointed trustee. Previously to the death of James A. Pine, Henry C. Pine had died intestate, without issue, leaving a widow Agnes E. Pine. His estate was duly administered, and at the time of White's appointment the title to the brick dwelling-house stood one half in the trust estate and one half in Agnes E. Pine. There was no administration of the estate of Caroline

Pine until January, 1885, when the defendant Edwin M. White was appointed administrator. Said White testified that on April 17, 1885 he had no notice of any debts of Caroline Pine, and Harrington A. Pine testified that he lived with his mother part of the time and she did not, to his knowledge, leave any debts. E. M. White had no knowledge of the trust property until just before he was appointed trustee, and then only in connection with his appointment. This brick dwelling-house was incapable of partition by metes and bounds. There was in the hands of Newton, executor of the estate of James A. Pine, $723.74 at the time of his death, as shown by his accounts, which was paid over to the defendant White on May 6, 1885, and which formed a part of the estate held by him under his trust. Agnes E. Pine lived in Worcester and was connected with an opera company, and was away from her home much of the time. On April 17, 1885, she conveyed her undivided half of the brick dwelling-house for $450, when its assessed value was $1,800, and its real value, as found by the judge, was $1,400. The deed was made to the defendant Edwin M. White, and on the same day another deed was made from him to his sister Fanny F. White, the other defendant, who is found by the judge to have furnished the purchase money. Nearly ten years afterwards Fanny F. White conveyed to one McIntosh, who on the same day conveyed in mortgage to the defendant Edwin M. White to secure the payment of $600 to him as trustee, and then conveyed the equity of redemption to said Edwin M. White. These last three deeds all bore date November 1, 1894, and were recorded March 9, 1895, and were parts of one transaction which actually took place at about the latter date. McIntosh was a mere conduit to pass the title. The consideration which Fanny F. White received for the property was $1,400. On April 15, 1896, Edwin M. White conveyed the equity of redemption back to Fanny F. White, who still holds the title. In this last transaction the property was rated at the same price. Fanny F. White was a surety on the bond of her brother as trustee.

The plaintiffs contend that the trustee is chargeable for his failure to make this purchase as trustee, on the ground that he obtained knowledge of the ownership and of the opportunity to buy at this low price through his relation to the estate as trus-

tee, that the nature of his interest in the house as trustee was such as to make it his duty to buy the other undivided half, if he could at a reasonable price, in order to relieve the trust estate from the limitations which come from the ownership of only an undivided share in such property, and that he had at his command, or easily could have obtained from the administrator of Newton's executor, money belonging to the trust more than enough to pay for the half which was sold; that his sister Fanny F. White was chargeable with knowledge of his duties and liabilities as trustee; and finally that the relations of Fanny F. White to the property were colorable, and that he was the only real party interested in the purchase.

The judge had the advantage of seeing the witnesses, and in such a hearing findings of fact cannot be set aside unless they are plainly wrong. *Crowell* v. *Keene*, 159 Mass. 352. Both the defendants testified that the money paid to Agnes E. Pine for the property belonged to Fanny F. White, and that her brother acted as her agent in making the purchase. Although there were strong grounds for suspicion that he was really acting for himself alone and not for his sister in taking the title, there is no sufficient evidence to warrant us in holding that the finding of the judge on this point was erroneous.

The case on this finding is one in which a trustee failed to buy for the trust estate property closely connected with it, which was offered for sale at much less than its value. It is not a case in which he personally profited by an investment which he ought to have made for the trust, because it was his sister and not he who was the principal in making the investment. Ordinarily a trustee is not liable for failing to make a particular investment so long as he uses his funds in making proper investments. It is not contended that he failed to invest the money properly unless he was bound to invest it in the purchase of this real estate. The contention is that he was bound to buy this undivided half because the value of the other half, which was a part of the trust estate, would be materially enhanced by joining this part to it so as to give control of the property, and because of the low price at which it could be bought.

It was his duty to act in good faith and to exercise a sound discretion, and it may be that a proper management of the trust

estate required him to invest a part of the money in the purchase of this half of the house. If the judge had so found and had held him liable for his neglect, we should have been disinclined to disturb the finding. It is plain that the original investment in an undivided half of the house would have been made more valuable by obtaining control of the other half and uniting the ownership. If the trustee had at his command money for investment, enough to buy the other half, and saw the opportunity to buy it at much less than its value, it was his duty to make the purchase.

The reasons which he gave in his testimony for not making it are, first, that he did not then have the money and did not know when he could obtain it, and secondly that facts came to his knowledge which made him doubt the validity of the title. In view of the fact that within less than three weeks after the purchase he received from the administrator of the executor $723.74, most of which it was his duty to invest, and inasmuch as it is also found that this had long been due, that he made no effort to obtain it for this purchase, and no attempt to give the trust estate the advantage of this opportunity to purchase, we are of opinion that the evidence warranted a finding that he did not use due diligence to get the money, if it was his duty to try to obtain it and purchase the property. He testified, however, that he had frequently called on the administrator of the deceased executor for this money, although he made no special inquiry or effort to get it when he learned of the opportunity to make the purchase. The presiding judge probably doubted whether he had reason to think that he could speedily get it.

The other reason that he gave for not buying is that the title seemed doubtful. He testified that the consideration stated in the deed from Harrington A. Pine to his father James A. Pine was $300, and that this small consideration would naturally lead one to think that there was some imperfection in the title, or something affecting its value. He also testified that in his opinion there was a possibility of the existence of creditors of Caroline Pine, who might be entitled to payment out of her estate, and that these claims might diminish the personal property in the estate of James A. Pine, which he received from her, or make it necessary to sell this real estate to pay the debts.

We must assume that the judge who heard the evidence decided that he acted in good faith and in the exercise of a sound discretion in omitting to purchase the share of Agnes E. Pine for the trust, and in acting as the agent of his sister in making the purchase for her. In view of the uncertainties disclosed by the testimony and the opportunity that the judge had of seeing the witnesses, we cannot say that his decision in favor of the defendants was wrong. A trustee cannot be held liable for a mere error of judgment in making or failing to make an investment, or in his management of the trust estate in other respects, unless the error is so gross as to show that he either acted in bad faith or failed to exercise that sound discretion which the law requires of all trustees in the performance of their official duties. *Brown* v. *French*, 125 Mass. 410. *Dickinson, appellant*, 152 Mass. 184. In determining the weight of the evidence given by the trustee to justify his conduct, his appearance and manner were important. The facts and evidence reported do not satisfy us that the findings of the judge were erroneous.

*Bill dismissed.*