## UNITED STATES NAT. BANK & TRUST CO. OF KENOSHA, WIS., v. SULLIVAN et al.
### No. 5093.

Circuit Court of Appeals, Seventh Circuit.
Feb. 20, 1934.

Walter W. Hammond and Ernest E. Jones, both of Kenosha, Wis., for appellants.

Judson W. Staplekamp and Robert V. Baker, Jr., Guardian ad litem, both of Kenosha, Wis., for appellees.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

SPARKS, Circuit Judge.

The facts as found by the court are not in dispute. On February 7, 1929, decedent Frank J. Sullivan entered into a trust agreement with the United States National Bank and Trust Company of Kenosha, hereafter referred to as the Bank, whereby it was to act as trustee of certain funds to be derived from insurance upon decedent's life, for the benefit of appellees who are his wife and children. Decedent, a resident of Wisconsin who had been a shoe merchant, died on March 9, 1930, leaving a will naming the Bank as executor of his estate, and as trustee of his testamentary trust. The Bank thereafter acted in both capacities. At the time of his death decedent owed the Bank $1,335 on an unsecured note or open account, and $20,000 upon a note secured by a mortgage upon the building owned by decedent in which he was conducting a retail shoe business at the time of his death. The Bank as trustee received on decedent's life insurance policies the following amounts:

| $ 2,031.00 | March 15, 1930 |
| 15,130.05 | March 19, 1930 |
| 27,500.67 | March 20, 1930 |
| 5,140.33 | April 1, 1930. |

On March 20, 1930, the Bank as trustee purchased from itself the mortgage note paying itself $20,000 out of the insurance trust funds, and without having a disinterested appraisement of the note or the real estate securing it. At that time the real estate was worth $19,837.18, and was subject to a street improvement lien of $4,150 with six per cent. annual interest due thereon from June 29, 1928, of which lien the Bank had knowledge.

On May 3, 1930, the Bank as executor purchased from the Continental Bank of Chicago for a consideration of $5,000, 150 shares of the Bank's capital stock of the par value of $3,000, using funds of the trust to pay for it. This in turn on the same day was delivered by the Bank as executor to itself as trustee of the insurance trust for a consideration of $6,000. Having already paid $5,000 to the Continental Bank out of the trust funds, an additional sum of $1,000 was taken from the trust funds by the Bank as trustee and credited to itself as executor, as an asset of the estate. At that time the book value of the stock, without discount for loans, notes, furniture and fixtures did not amount to $6,000.

On October 3, 1930, the Bank as trustee purchased from itself as executor, the furniture, fixtures and stock of the retail shoe business which was being conducted by decedent at the time of his death in the building covered by the mortgage which had been purchased by the Bank as trustee from itself as

creditor. The purchase price agreed upon was $12,000, but the price paid was $12,200, which amount the trustee obtained by the sale of valid mortgage notes belonging to the trust. The trustee conducted the business with a loss of $4,988, of which $2,918.14 was due to depreciation of inventory.

On November 13, 1932, the Bank suspended business and was taken over by the Comptroller of the Currency who named appellant Taylor as receiver. On January 6, 1933, the Comptroller made an assessment upon each shareholder of the Bank for 100% of the par value of his stock.

The money obtained from the sale to the trustee of the three items referred to was applied by the executor toward the payment of creditors' claims and expenses of administration, including the Bank's unsecured claim of $1,335.18, and its charge for services as executor in the sum of $943.08.

The estate of decedent was administered under the jurisdiction and authority of the Kenosha County Court whose appraisers on May 8, 1930, appraised the real estate covered by the mortgage at $24,000.

On December 31, 1932, appellant receiver filed in the Circuit Branch of the Kenosha County Court a petition for discharge of the Bank as trustee, submitting a final account of the trust for approval, and asking that a new trustee be appointed and that the Bank as trustee be released from further liability upon its compliance with whatever terms the court might decree. Among the investments shown in the report were the three items now in controversy totalling $38,200. Appellees filed objections to the allowance of those items, and brought this action for the purpose of having the trust estate reimbursed to the extent of those investments.

The District Court found and decreed that the three investments objected to were not suitable and proper investments for trust purposes under the trust, and were not made with such discretion as would tend to safeguard the preservation of the fund and the procurement of a just income therefrom, but were made in hazardous types of investments from which little could be expected in earnings, or in the safe return of the principal.

The District Court further found that by reason of the position of the Bank and its acceptance of its various positions and relationships to the trust estate, and to the cestuis que trust, and to itself as creditor, it necessarily could not exercise a wise discretion in the performance of its duties as trustee of the insurance trust, and could not and did not exercise that degree of discretion, diligence, prudence, and fidelity with respect to the controverted investments which is required of a trustee in the administration of trust estates.

The court thereupon concluded that appellees should recover the amount demanded with six per cent interest per annum from November 1, 1932, the last date of return of earnings to the trust which the court found reasonable and fair, to November 13, 1932, the date the Bank suspended business.

The conclusions of law further set forth in detail the method by which appellees' claim was to be enforced against the indemnity fund in the hands of the State Treasurer, concerning which no objections are raised here in case the claim is held to be valid.

The question presented is whether each of the items above referred to was proper trust investment under the provisions of the first paragraph of the trust agreement which reads as follows:

"Upon maturity of any and all policies held hereunder, by death of party of the first part, Trustee shall present for collection such policies, and upon receipt of the proceeds therefrom shall thereupon and thereafter invest, reinvest and keep invested the same in such investments as Trustee in its wise discretion shall deem proper, without confining Trustee to what are known as legal investments for Trustees under the laws of the state of Wisconsin, with authority in Trustee to alter, vary, change, transfer and retransfer investments and reinvestments from time to time in the absolute discretion of the Trustee, and with special authority in Trustee to purchase as investments in the trust hereby created, securities or other properties, real or personal, which may be a part of the estate of the party of the first part at the time of his death."

It is contended by appellants that the questioned investments were authorized by the trust agreement which expressly gave to the trustee absolute discretion in the selection of investments without confining him to what are known as legal investments as required by the Wisconsin statutes, and which also gave him express authority to purchase assets of decedent's estate.

The general propositions of law upon which appellants rely may be admitted, that is to say, it was the duty of the trustee to carry out the intention of the creator of the trust, and in so doing, if it conducted itself faithfully, and exercised a sound discretion, it cannot be held liable. It was not liable

for a mere error of judgment in making any investment unless the error were of so gross a nature as to show bad faith or lack of sound discretion. If a trustee acts within his powers, good faith is a defense to a charge of mistaken judgment. If a trust provision gives the trustee wide powers of investment he may exercise his sound discretion within those limits, and his actions with respect thereto are not to be tested by considerations of what may be termed "hindsight" judgment.

In applying these principles to a grant of power to a trustee, such power must be construed in the light of other well established law governing the actions of trustees. Discretion to a trustee does not mean an arbitrary or unlimited or absolute discretion, but a reasonable one. He must use judgment and prudence, and if no limits are placed on his discretion, he must nevertheless invest the funds according to approved rules for trust investments. Pabst v. Goodrich, 133 Wis. 43, 113 N. W. 398, 14 Ann. Cas. 824; Estate of Allis, 191 Wis. 23, 209 N. W. 945, 210 N. W. 418. A trustee shall not be permitted to benefit himself in dealings with the trust estate. Such transactions are not merely prima facie invalid, but negative any idea of good faith and free consent. Shaw v. Crandon State Bank, 145 Wis. 639, 129 N. W. 794; Will of Leonard, 202 Wis. 117, 230 N. W. 715, 83 A. L. R. 712; Ludington v. Patton, 111 Wis. 208, 86 N. W. 571. Good faith alone will not protect a trustee, but he must also exercise diligence, prudence, and absolute fidelity. Wisconsin has consistently adhered to the strict rule with reference to the liability of trustees as early adopted by New York, rather than the more liberal rule adopted in Massachusetts. Estate of Allis, supra.

There is no doubt that the Bank, under the will and the insurance trust agreement had a right to act in both capacities of executor and trustee, notwithstanding the fact that it was a creditor of decedent. Indeed the obvious intention of decedent was that it should so act, but nevertheless it must be considered that it was also the intention of decedent that the Bank in thus acting should comply with the well known principles of law governing such transactions. We do not say that the law brands such transactions as void on their face, but it does scan them very closely, because of the temptations which are inherently present. We may assume without admitting that the investments are not void as to the beneficiaries merely because the trustee failed to secure the permission of the court to make them or its approval afterwards, although, as conceded by appellants, an order of the proper court expressly directing such investments would have eliminated this controversy. However, the fact that they were never ordered or approved was quite properly considered by the court, together with all the other pertinent facts in determining whether there was bad faith or a lack of sound discretion. While the law of Wisconsin governs this case, the principle of law here involved is the same in Wisconsin as it is in Massachusetts, that is to say, a trustee is liable for an error of judgment in making an investment if the error is so gross as to show that he either acted in bad faith or failed to exercise sound discretion. Taft v. Smith, 186 Mass. 31, 70 N. E. 1031, Pine v. White, 175 Mass. 585, 56 N. E. 967.

Appellants contend, however, that the District Court did not pass upon the real question presented which was whether there had been an abuse of trust powers, but that the court's findings and decree are based upon lack of power of the trustee to act without the express direction of a court, due to the various inconsistent capacities in which it was acting. We think this construction of the court's findings and conclusions is not warranted. The court not only found that under the circumstances presented it was impossible for the Bank to exercise sound discretion, or good faith, but it also found that it had not exercised that sound discretion and judgment which the law required. We think the first finding is supported in principle at least. Shaw v. Crandon State Bank, supra. It will be noted that the District Court in this case did not lay it down as a general rule that one acting in the triple capacity of trustee, executor, and creditor could in no event exercise a sound discretion, but it held that under the circumstances of this case the Bank was unable to, and did not exercise a sound discretion. Aside from its inability to do so, the Bank is liable if it failed to exercise sound discretion, and we think there is substantial evidence to support the court's decree in that respect.

Admitting that the trust agreement authorized the trustee to purchase assets of the estate, yet that authority was not mandatory, nor did it warrant the Bank in paying therefor more than they were worth, nor in conducting the trust in a manner different from that authorized by the laws of Wisconsin. While appellants in their argument admitted that they did not controvert the findings of fact, it is only fair to say that they contend that the court did not find that the store

building was worth only $19,837.18, but that it merely found that witness Carlson testified to that fact. As a matter of fact, he testified that it was worth that amount free of encumbrances. We think appellants are in error in their construction of that finding, which reads, "That on the twentieth day of March, 1930, in accordance with the testimony of witness (Carlson) * * * the said property was worth $19,837.18." If that finding is prefaced with the words, "The court finds," as it should be when construing it, it is quite obvious that the court itself made the finding of value and based it on the testimony of Carlson. It is quite true that Carlson was the only witness who testified for appellees on valuation, but it is also true that he was the only disinterested witness who testified on that subject for either side. There was an appraisement of this real estate made by the Bank's discount committee at the time the mortgage was sold to the trust. This committee was made up of officers and directors of the Bank, and the amount of that appraisement is not disclosed by the record.

With respect to the sale of bank stock to the trust, the evidence shows that the Continental Illinois Bank of Chicago held it with other collateral aggregating $274,000, as security for an indebtedness of decedent to that bank of $301,000. The record discloses no appraisement. Decedent's estate was insolvent, and the Continental Bank was bound to sustain a loss, and the fact that it sold the bank stock under those circumstances to the executor for $5000 certainly constitutes quite substantial evidence that that was all it was worth. When the executor immediately turned this stock into the trust fund for $6000 and credited the assets of the estate with $1000 from which the Bank's unsecured claim and its charge for services were paid, a substantial basis was created for the court's conclusion that there was a lack of sound discretion on the part of the trustee in participating in the transaction.

The appraised value of the shoe store, if any, was not shown. The court found that the Bank as executor agreed to sell it to itself as trustee for $12,000. We assume, as no doubt the trial court did, that this was the estate's appraised value. This is in a measure confirmed by the testimony of the Bank's president who said that it was turned over to the trust for $12,200 which was approximately the appraised value. It will be borne in mind that this was practically seven months after decedent's death, and so far as the record discloses there were no other prospective purchasers. This court will take judicial knowledge, as no doubt the trial court did, that during those seven months values were declining rapidly, and commercial enterprises of all kinds were generally regarded as extremely hazardous. If all the property of the estate were appraised at the same time, it was within a short time after decedent's death, and under the circumstances enumerated we think the court was warranted in finding that there was a lack of sound discretion on the part of the trustee.

Decree affirmed.